UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNY DEAN, *on behalf of herself and all others similarly situated*,<br><br>*Plaintiff,*<br><br>v.<br><br>DICKSON'S FARMSTAND MEAT, INC.,<br><br>*Defendant.* | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Civ. Action No.: 17-CV-8262 |

Plaintiff Jenny Dean, on behalf of herself and all others similarly-situated, by and through her attorneys Kakalec & Schlanger, LLP, as and for her Complaint, alleges as follows:

Preliminary Statement

1. Plaintiff Jenny Dean ("Ms. Dean" or "Plaintiff") was one of approximately 100 or more participants in an unpaid "internship" program at Dickson's Farmstand Meats, Inc. ("Dickson's" or "Defendant"), a butcher shop located in New York City's Chelsea Market. Promising interns "a start to their meat journey" but no pay, Dickson's employed approximately 25 interns a year. While interns regularly worked 15-20 hours per week, they were never paid for their work. Instead, Dickson's policy and practice was to occasionally give interns meat from the shop as a way to compensate for its failure to pay.

2. Interns at Dickson's received only minimal training; the bulk of their time was spent engaging in routine tasks such as packing, labeling, and storing meat, which mostly took place outside of the supervision of Dickson's employees. Dickson's, on the other hand, benefitted significantly from the interns' unpaid labor – as much as 160 hours of unpaid labor each week – which allowed it to hire fewer employees, pay its staff for fewer hours, and increase its profits.

3. Plaintiff now brings this action on behalf of herself and other Dickson's interns, claiming that she and the interns who worked for Dickson's within the past six years ("the interns") were in fact employees of Dickson's who should have been paid at least the minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and New York Labor Law.  Plaintiff brings her FLSA claim as a collective action under 29 U.S.C. § 216(b) on behalf of herself and those Dickson's interns who may opt into this action as permitted by that statute.   She brings her state law claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all Dickson's interns who worked for the company between October 2011 and the present.

## Jurisdiction and Venue

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C.  § 1337, and 29 U.S.C. § 201 *et seq.*

5. The Court has jurisdiction over Plaintiff's pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).   Plaintiff's state law claims are parts of the same case or controversy as Plaintiff's federal claim.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

7. Defendant resides and/or does business in this district.

## Parties

8. Plaintiff Jenny Dean is a resident of Kings County, New York who was an intern at Dickson's between May 2017 and July 2017.

9. Ms. Dean consents to being a party Plaintiff in this action. (See Exhibit 1, attached.)

10. Dickson's Farmstand Meats, Inc. is a New York company which has its principal place of business in New York County, New York.

11. According to its website, Dickson's is "a neighborhood butcher shop in Chelsea Market offering artisanal meats and house-made charcuterie."

12. Dickson's also offers small demonstration and "hand's on, lab style" classes to the public.

13. At all times relevant to this action, Defendant was an "employer" of Plaintiff and the interns within the meaning of the FLSA and New York Labor Law.

14. At all times relevant to this action, Plaintiff and the interns were "employees" of Defendant within the meaning of the FLSA and New York Labor Law.

15. At all times relevant to this action, Defendant "employed" Plaintiff and the interns within the meaning of the FLSA and New York Labor Law.

16. Defendant was engaged in commerce as defined by 29 U.S.C. § 203, and, upon information and belief, it has a gross volume business of not less than $500,000 per year.

### Factual Allegations

17. Since before October 2011, Dickson's has run an internship program in which unpaid interns work for the company for periods of approximately three months.

18. Dickson's advertises on websites like www.culinaryagents.com and www.goodfoodjobs.com in order to find interns.

19. It also seeks interns through social media, such as through a recent "tweet" on Twitter saying "We're looking for cutting room interns!"  (Sept. 5, 2017)

20. The advertisements represent that interns are compensated through "barter," and that "[i]nterns work in exchange for meat."[1]

21. At any given time, there are approximately six to eight interns in Dickson's internship program.  Interns work two to four days per week, for shifts that are usually seven hours long.

22. The job duties of interns include, but are not limited to, the following:  (a) assisting in cutting room activities; (b) sorting, packing, and labeling beef, lamb, pork and goat according to cut and primal; (c) organizing and maintaining Dickson's meat inventory; (d) assisting in filling customer orders; (e) grinding beef, pork, and lamb; and (f) assisting Dickson's kitchen team as needed.

23. None of Dickson's interns have been paid for their work.

---

[1] https://culinaryagents.com/jobs/10827-Internship; https://www.goodfoodjobs.com/jobs/102290/intern-butcheringcutting-room.html

24. Dickson's internship program is not, and has never been, part of a formal education program.

25. Dickson's interns do not participate in the internship program as part of integrated coursework or an established vocational program, and they do not receive academic credit for their work.

26. Interns' work periods at Dickson's do not correspond to a traditional academic calendar. Instead, interns work in periods of time, usually three-month periods, chosen by Dickson's.

27. Interns at Dickson's received little training. In fact, advertisements for Dickson's internship state: "NOTE - we do not train 'butchers'! But we can start you on your meat journey."

28. The staff at Dickson's would occasionally demonstrate some aspect of Dickson's work to those interns who were in the shop. Such demonstrations generally did not occur more than once a day, and they would not take place at all if the store was busy or receiving a large number of meat deliveries. Any training which took place at Dickson's was not similar to training offered in an educational environment.

29. After some initial demonstrations and directions, interns worked largely unsupervised for several months. Their work for the company continued well past the time in which they would receive any beneficial learning.

30. While interns were told they were permitted to attend Dickson's open-to-the-public classes, in fact interns were rarely able to sign up for such classes.

31. Plaintiff, for example, tried to sign up for Dickson's classes three different times. Each time, however, the class she sought to attend was filled with paying customers so she was not permitted to attend.

32. To Plaintiff's knowledge, other interns also tried attend classes but were similarly unable to attend because the classes were full.

33. The primary beneficiary of Dickson's internship program was not the unpaid interns, but Dickson's, which received an immediate advantage from the intern's unpaid labor.

34. If it were not for the internship program, Dickson's would have had to hire additional employees or require its current employees to work longer hours. In that sense, Dickson's internship program displaces regular employees, rather than complements its staff.

35. Dickson's scheduled interns' work based on its own needs rather than the needs of the interns. For example, when Plaintiff was an intern, at least three interns would be scheduled to work on Tuesdays and Wednesdays, which were days that Dickson's received whole animal deliveries and, as a result, needed more workers in the store.

36. On whole animal delivery days, butchers would cut the meat while interns would perform tasks such as taking the skin off the meat, vacuum packing the meat, labeling meat packages, and taking the meat to storage areas.

37. For the rest of the week, there would usually not be more than two interns working at Dickson's at a time.

38. On Mondays, the interns' usual tasks would be to grind, pack and seal 300-400 pounds of meat. On occasion, one of the butchers would assist with this work in order to ensure that all of the work was completed. However, the work was largely performed without supervision or input from Dickson's paid staff.

39. In sum, any tangible and intangible benefits to the interns were greatly outweighed by the benefits to Dickson's of its internship program.

40. Plaintiff and the interns were manual workers within the meaning of New York Labor Law § 191(a). However, Plaintiff and the interns were not paid wages weekly, in violation of New York Labor Law § 191(a).

41. Defendant failed to furnish Plaintiff and the interns, at the time they began working for Dickson's or any time thereafter, with written notice of their wage rates, manner of payment, regular pay dates, or any of the other information required by New York Labor Law 195(1).

42. Defendant also never furnished Plaintiff and the interns with statements with each payment of wages that specified the dates covered by payment, the rate of pay, and other information required by New York Labor Law 195(3).

43. Defendant's failure to pay Plaintiff and other interns as required by the FLSA and New York Labor Law was willful and intentional.

44. Defendant knew that its failure to pay the interns was prohibited by the FLSA and New York Labor Law, or it showed willful disregard as to whether its actions were so prohibited.

45. During the course of their employment, the Plaintiff and the interns handled, sold, or otherwise worked on items that were produced for movement in interstate commerce.

46. Defendant undertook all of the actions and omissions alleged above either directly or through its agents who were authorized to undertake such actions and omissions.

### FLSA Collective Allegations

47. Plaintiff brings her FLSA claims on behalf of herself and those individuals who may opt in to this action pursuant to 29 U.S.C. § 216(b) and who had unpaid internships at Dickson's between October 26, 2014 and the date of preliminary approval of the opt-in class.

48. Plaintiff and the interns were subject to the same policies and practices of Defendant.

49. All interns worked at Dickson's Chelsea Market location.

50. None of the interns were paid for their work, in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

51. None of the interns received academic credit for their work, and any training offered by Dickson's was not integrated into any academic coursework or pursuits.

52. Common proof applicable to the interns in this single location will show that the internships offered by Dickson's were primarily for the benefit of Dickson's, not for the benefit of the interns.

53. Plaintiff is currently unaware of the identities of all of the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from Defendant's records.  Defendant should therefore be required to provide Plaintiff with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked as interns for Defendant between October 26, 2014 and the present.

### Rule 23 Class Allegations

54. The Plaintiff brings her state law claims on behalf of herself and all other persons similarly-situated, pursuant to Fed. R. Civ. P. Rule 23.

55. Plaintiff seeks to represent the following class (the "Class") with regard to her state law claims:   all individuals who had unpaid internships at Dickson's between October 26, 2011 through the date of preliminary approval of the class.

56. Excluded from the class are Dickson's legal representatives, officers, directors, assigns, and successors, or any individual who at any time during the class period has had a controlling interest in Dickson's; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Class.

### *Numerosity*

57. Upon information and belief, the size of the Class is at least 100 workers.

58. The members of the Class are sufficiently numerous that joinder of all members is impractical.

59. Plaintiff is currently unaware of the identities of all of the employees who would be members of the Class, but this information is readily ascertainable from

Defendant's records. Defendant should therefore be required to provide Plaintiff with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked as interns for Defendant between October 26, 2011 and the present.

*Existence and Predominance of Common Questions*

60. Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over questions affecting only individual Class members.

61. These common questions include:

   a) Whether Defendant's internship program primarily benefitted Defendant or the interns;

   b) Whether Defendant's internship program was related to any formal education program;

   c) Whether the interns were in fact employees of Defendant and therefore entitled to be paid at least the minimum wage for their work in accordance with New York Labor Law;

   d) Whether Defendant had a policy, pattern, or practice of failing to pay its interns wages of at least the minimum wage as required by New York Labor Law;

   e) Whether Plaintiff and the interns were manual workers and whether they were paid their full pay on a weekly basis as required by New York Labor Law § 191; and

   f) Whether Plaintiff and the interns were given written notices of pay rate and other information as required by New York Labor Law § 195(1) and

whether they were given pay statements as required by New York Labor Law § 195(3).

### *Typicality*

62. Members of the proposed New York Labor Law class have all been subject to the same unlawful practices of Defendant, and their claims arise out of these same practices.

63. Plaintiff and the interns have the same statutory rights under the New York Labor Law, and are all non-exempt employees within the meaning of the New York Labor Law.

64. Plaintiff and the interns suffered similar types of damages.

65. Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff was an intern who worked for Defendant and suffered the same labor law violations as other employees.

66. Plaintiff's interests are co-extensive with the interests of the Class members; Plaintiff has no interest adverse to the Class members.

67. Defendant acted or refused to act on grounds generally applicable to the Class, therefore making final injunctive relief and declaratory relief appropriate as to the Class as a whole.

### *Adequacy*

68. Plaintiff will fairly and adequately represent the interests of the class members. Her interests do not conflict with the interests of the members of the Class she seeks to represent.

69. Plaintiff understands that, as class representative, she assumes a responsibility to the class to represent its interests fairly and adequately.

70. Plaintiff has retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiff and her counsel will not vigorously pursue this matter.

### *Superiority*

71. A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

72. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct.

73. Further, it would be difficult for members of the Class to effectively individually obtain redress for the wrongs done to them. If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and the Defendant.

74. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the Court system.

75. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

76. This case does not present individualized factual or legal issues which would render a class action difficult.

77. In the alternative, the Class may be certified because:

(a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## Causes of Action

I. <u>Fair Labor Standards Act  (Collective Claim)</u>

78. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

79. Defendant willfully and intentionally failed to pay the minimum wage to Plaintiff and the interns for every hour that they worked between October 26, 2014 and the present.  Defendant's actions violate the Fair Labor Standards Act, 29 U.S.C. § 206(a) and its implementing regulations.

80. Defendant also violated the FLSA by failing to keep records as required by statute, 29 U.S.C. § 211(c).

81. The Plaintiff and those interns who chose to opt-in to this action are therefore entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

82. The Plaintiff and those interns who opt-in to this action also seek, and are entitled to, the costs of Court and the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

II:  New York Labor Law (Minimum Wage) (Class Claim)

83. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

84. Defendant failed to pay minimum wage to Plaintiff and the interns for every hour that they worked, in violation of New York Labor Law § 652 and its implementing regulations, 12 N.Y.C.R.R. §142-2.1 *et seq.*

85. Defendant's failure to pay the required wages as set forth above was willful and intentional within the meaning of New York Labor Law §§ 198 and 663.

86. Plaintiff and the interns are entitled to their unpaid wages as mandated by New York Labor Law, plus an additional 100 percent as liquidated damages, as a consequence of the Defendant's unlawful actions and omissions, in accordance with New York Labor Law §§ 198 and 663.

87. Plaintiff and the interns also seek, and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

III.    <u>New York Labor Law (Failure to Pay Wages) (Class Claim)</u>

88. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

89. Defendant failed to pay Plaintiff and the interns, who were manual workers, on a weekly basis in violation of New York Labor Law § 191.

90. Plaintiff and the interns are entitled to their unpaid wages mandated by New York Labor Law, plus an additional 100 percent as liquidated damages, as a consequence of the Defendant's unlawful actions and omissions, in accordance with New York Labor Law §§ 198.

91. Plaintiff and the interns also seek, and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

VI.    <u>New York Labor Law (Wage Notice and Wage Statement Violations) (Class Claim)</u>

92. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

93. Defendant failed to furnish Plaintiff and the interns, at the time of their hiring or thereafter, with notices containing their rates of pay and other information as required by New York Labor Law § 195(1).

94. For Defendant's violation of New York Labor Law § 195(1), Plaintiff and the interns are each entitled to $50 for each work day in which this violation occurred or continued to occur, in an amount not to exceed $5,000 per Class member.

95. Defendants also failed to furnish Plaintiff and the interns with wage statements with every payment of wages which provided all of the information required under New York Labor Law § 195(3).

96. For Defendant's violation of New York Labor Law § 195(3), Plaintiff is entitled to $250 for each work day in which the violation continued to occur, in an amount not to exceed $5,000, pursuant to New York Labor Law §198(1-d).

97. Plaintiff and the interns also seek, and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

<u>Demand for Jury Trial</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

WHEREFORE, Plaintiff requests that this Court enter an Order:

   a. assuming jurisdiction over this action;

   b. declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiff to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible interns who chose to do so to opt-in to this action;

   c. certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

   d. declaring that Defendant violated the FLSA and New York Labor Law;

   e. permanently enjoining Defendant from further violations of the FLSA and New York Labor Law;

   f. granting judgment to Plaintiff and the interns that opt-in pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid wages plus an equal amount in liquidated damages;

g. granting judgment to Plaintiff and the interns on their New York Labor Law claims and awarding them their unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

h. Awarding Plaintiff and the interns prejudgment and postjudgment interest as allowed by law;

i. Awarding Plaintiff and the interns their costs and reasonable attorneys' fees; and

j. Granting such further relief as the Court finds just.

DATED:   New York, NY
         October 26, 2017

                KAKALEC & SCHLANGER, LLP

                Patricia Kakalec
                Evan S. Rothfarb
                85 Broad Street, 18th Floor
                New York, NY 10004
                T: (212) 500-6114
                F. (646) 612-7996
                pkakalec@kakalec-schlanger.com
                erothfarb@kakalec-schlanger.com

                *Attorneys for Plaintiffs*

# EXHIBIT 1

# CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

I hereby consent to be a party Plaintiff in an action against Dickson's Farmstand Meats and/or related entities and/or individuals under the Fair Labor Standards Act to recover wages, including overtime, liquidated damages, attorneys fees, and costs, and for related relief.

_Jenny Dean_
Full name

_[signature]_
Signature

_9/28/17_
Date